UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- :
                                                        :

PEARL SEAS CRUISES, LLC,                 :     CIVIL ACTION NO.
                                                        :
              Petitioner,                     :
                                                        :
        v.                                 :
                                                        :
IRVING SHIPBUILDING INC.,               :
                                                        :
              Respondent.               :
                                                        :     February 7, 2011
---------------------------------------------------------------- :


**PEARL SEAS' PETITION**
**TO VACATE ARBITRAL AWARDS DATED**
**NOVEMBER 9, 2010 AND NOVEMBER 19, 2010,**
**AND FOR DECLARATORY JUDGMENT AND TO STAY ARBITRATION**

Petitioner Pearl Seas Cruises, LLC ("Pearl Seas"), brings this Petition seeking:

(1)      vacatur of the Partial Final Arbitration Awards, dated November 9, 2010 and November 19, 2010 rendered in New York by a panel of arbitrators (the "Panel"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq., and an order terminating the Contract, as hereinafter defined, on the grounds that the two majority arbitrators ("Majority")[1] (a) exceeded their authority by extending deadlines for obtaining class, flag state, and regulatory approvals, which they are expressly prohibited from doing by the terms of the dispute resolution clause in a cruise ship construction contract between Pearl Seas, as owner, and Irving Shipbuilding Inc., as builder ("Irving"), which assigns those issues to the final and binding jurisdiction of specific regulatory authorities; (b) so imperfectly executed their powers by reason of refusing to rule and extending deadlines indefinitely for delivery of a vessel that conforms to contractual requirements that a mutual, final and definite award on the subject matter submitted to them was not made; (c) committed misconduct and misbehavior by (i) failing to complete hearings within 90 days as required by the Contract, as hereinafter defined, (ii) improperly extending the deadline for delivery of the ship and improperly holding the issue of contract termination in abeyance, and (iii) modifying an award once the Panel was *functus officio*; and (d) showed evident partiality to Irving.

(2)      a declaratory judgment pursuant to 28 U.S.C. § 2201 that the arbitrators have no legal authority to determine issues of the vessel's compliance with the rules and

6734763.3                        -2-

regulations of the Classification Society ("Class" or "Classification") or regulatory compliance or to extend the delivery date of the Vessel based on alleged disputes concerning Class, flag state or regulatory compliance;

      (3)    a stay pursuant to 9 U.S.C. § 3 of further arbitration proceedings by the Panel as presently constituted; and

      (4)    such other and further relief as this Court deems just and proper under 9 U.S.C. Chapter 1 and 28 U.S.C. § 2201.

In furtherance of its Petition, Pearl Seas alleges as follows:

## PRELIMINARY STATEMENT

1.    Pearl Seas contracted in September 2006 with Irving for the construction of a passenger cruise ship at Irving's shipyard. Irving was to deliver the Vessel to Pearl Seas ready for immediate service in May 2008. When Irving finally attempted to deliver the Vessel in May 2009, it contained major unresolved deficiencies and lacked the regulatory approvals required for service--all clear violations of Irving's duties under the Contract. In responding to Pearl Seas' arbitration requests, the Majority arbitrators have disregarded substantive requirements of the Contract (including a broad limitation on their authority to resolve regulatory matters). The Majority's 11/9/10 and 11/19/10 partial final awards (and in some cases utter failure to rule) should therefore be vacated.

2.    This case involves application of somewhat unusual dispute resolution procedures, where certain matters are committed to the presently-constituted arbitration Panel, but other matters -- namely all regulatory compliance including that relating to fire

---

[1] In all cases, Majority refers to Messrs. John Woods (the Panel's chairman) and Louis Sheinbaum. In all

safety and other important issues -- are expressly excluded from the Panel's jurisdiction, and instead referred for final determination to regulatory bodies identified in the Contract who, in addition to enforcing their own rules and regulations, also enforce the International Convention for Safety of Life at Sea ("SOLAS").

3.      As discussed in thorough and highly critical dissenting opinions by arbitrator David A. Nourse, the Majority has unlawfully assumed jurisdiction over issues of regulatory compliance, contrary to the explicit arbitration agreement in the Contract, and is currently in the process of investigating those regulatory issues for a decision as to whether Pearl Seas should have accepted the Vessel for delivery. This action is brought to correct the Majority's unlawful actions and to bring this wasteful ultra vires exercise to a halt. The present Petition is related to Petitioner's filing before this Court dated August 11, 2010 (Civil Action No. 3:10-CV-1294-JBA), which challenges the Panel Majority's partial final award dated July 2, 2010, for which the dissenting arbitrator also filed a dissenting opinion.

4.      This Petition seeks vacatur of the Majority Partial Final Award dated November 9, 2010 ("11/9/10 PFA") relating to the "Deliverability" of the Pearl Mist and the Majority "Clarification" of the 11/9/10 PFA dated November 19, 2010.

5.      The Majority has completely rewritten the Contract so as to deprive Pearl Seas of what it bargained for, which is delivery in May 2008 of a vessel immediately ready for international overnight passenger service. Instead the Panel Majority has given Irving an unlimited amount of time, now years, to correct deficiencies and meet the

---

cases, Mr. David Nourse is the dissenting arbitrator.
6734763.3

Contract's specifications as to regulatory approvals and noise levels on the Vessel. The impact of the Panel Majority's various PFAs and Irving's response to them is that:

- Pearl Seas cannot reject the Vessel, even though Pearl Seas cannot use the Vessel for passenger service;

- Pearl Seas cannot terminate the Contract yet cannot obtain compensation for Irving's delays;

- Pearl Seas cannot obtain a refund of $30 million it paid Irving;

- Irving is not seeking any regulatory approval for the Vessel;

- Irving has ceased all work on the Vessel;

- Pearl Seas must wait indefinitely until Irving decides whether to fix the Vessel;

- Irving has no exposure to liability for damages for intentionally delaying delivery of the Vessel;

- Pearl Seas construction financing debts continue to accrue;

- Pearl Seas will never recover the marketing expenses it incurred;

- Pearl Seas cannot sell any cruise tickets until Irving tells Pearl Seas when the Vessel will be available;

- Irving's failure to promptly correct known construction deficiencies is predatory conduct designed to exhaust the financial resources of Pearl Seas and destroy it.

6.      There is no contractual or legal basis for the outcome that was reached by the Panel Majority in the PFAs other than its evident partiality in favor of Irving and bias against Pearl Seas.

7.      For the above-listed reasons and because the Panel Majority exceeded its authority, committed misconduct, imperfectly executed its powers, conducted its own investigation, improperly extended deadlines, modified a final award and manifestly disregarded the law, the Majority's partial final awards dated 11/9/10 and 11/19/10 must be vacated.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this Petition pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 203 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. § 201 et seq.  In addition there is subject matter jurisdiction pursuant to 28 U.S.C. § 1332 since the members of the petitioner are citizens of Connecticut, the respondent is a citizen of Canada and the amount in controversy exceeds $75,000 exclusive of interest and costs. Venue is proper pursuant to 28 U.S.C. § 1391(d) and 9 U.S.C. § 204.

9.      This Court has personal jurisdiction of the defendant pursuant to Conn. Gen. Stat. § 33-929(f) since the contract at issue was made in Connecticut and performed by the plaintiff in Connecticut, and the defendant came to Connecticut on numerous occasions in connection with soliciting, negotiating and performing the contract.

# FACTUAL ALLEGATIONS

**A.     The Parties**

10.     Petitioner Pearl Seas is a Marshall Islands limited liability company with registered offices at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands, MH96960 and operating offices at 741 Boston Post Road, Guilford, Connecticut 06437, USA.  Its members are citizens of Connecticut.  Pearl Seas was organized in 2006 for the sole purpose of owning and operating an overnight passenger vessel to be constructed by Irving at Halifax.  Pearl Seas has no other vessels.

11.     Respondent Irving is a corporation organized under the laws of New Brunswick, Canada, with its principal operating office at 3099 Barrington Street, Halifax, Nova Scotia B3K 5M7, Canada.  It is engaged in the shipbuilding business and is part of a Canadian industrial conglomerate which also has significant holdings in oil, forest products, natural resources/raw materials extraction, production, transportation and marketing endeavors.  The conglomerate is among the very largest privately-held industrial groups in Canada.

**B.     The Contract**

12.     In September 2006, Pearl Seas entered into a contract with Irving for the construction and sale of the Vessel (also known as Hull No. 92 and as the M/V Pearl Mist), an overnight passenger cruise ship (the "Contract"[2]).  The Contract provides, among other terms and conditions, that the Vessel would be delivered to Pearl Seas on

---

[2] Appendix to the Pearl Seas' Petition, Civil Action No. 3:10-CV-1294-JBA, filed August 11, 2010 (hereafter, "Appx. to 8/11/10 Petition"), Ex. 1, Contract for Construction and Sale of a 87.17M (286 ft) Passenger Cruise Ship (Hull No. 92) Between Pearl Seas Cruises LLC As Owner and Irving Shipbuilding Inc. as Builder ("Contract").

6734763.3

May 1, 2008. Contract § 8.1. This delivery deadline was extended by mutual agreement, dated April 17, 2007, (the "Way Forward Agreement") from May 1, 2008 to May 29, 2008, and the Contract price was increased from Canadian $35.3 million to Canadian $43.5 million.[3]

13.     The Contract makes clear that time is of the essence, reflecting the business purpose of Pearl Seas--to hire Irving to design, build and deliver a passenger cruise ship within twenty months of the Contract's signing for the 2008 "summer cruise" season, which extends from mid-May through October.

14.     At delivery, the Contract requires the Vessel (a) to have all regulatory approvals needed for operation (Specification[4] 1007) and (b) to be ready for immediate service (Specification 1016). Irving and Pearl Seas designated Lloyd's Register as the Classification society for the Vessel (Contract § 1.3.1). Classification is the process by which a ship is inspected to make sure it complies with various safety regulations, and is a legal and practical requirement before a ship can operate and/or carry passengers internationally. Specification 1007 requires Irving to obtain and pay for Lloyd's Register classification and to deliver the Vessel with classification certificates; obtain classification; coordinate all regulatory inspections; and "pay all fees for obtaining certificates, including associated fees and expenses of regulatory body inspectors." Specification 1320.2 repeats these requirements and states: "Contractor shall obtain and deliver all required certificates and classification reports, etc., as required by either the

---

[3] Appx. to 8/11/10 Petition, Ex. 3, Mutual Way Forward Agreement Between Irving Shipbuilding Inc. / Pearl Seas Cruises LLC.
[4] Appx. to 8/11/10 Petition, Ex. 2, Specifications, Exhibit A to the Contract ("Specification").

6734763.3

flag state or the classification society." Specification § 1007 makes clear that all required certificates shall be "posted on board, framed under glass," Contract § 8.3.1.4, Specification § 1007. Irving is required to supply the crew for all tests prior to delivery. Specification 1500.

15. Irving is also required to construct a Vessel that (a) meets the requirements of the International Convention for the Safety of Life at Sea ("SOLAS"), (b) is built under the rules and regulations and flagged by the Marshall Islands, the designated flag state (Contract § 1.5.1) and (c) has all "documentation and national certification of the vessel for its intended service and route," which, because the parties understood the Vessel would operate to and from the United States, would necessarily include U.S. Coast Guard approval. Flag state approval is an absolute necessity for a passenger vessel because a vessel in international waters without a flag state is not subject to protections under international law. SOLAS compliance is required by U.S. law. and the flag state.

16. The Contract makes clear that only valid class certificates establish compliance with rules of the classification society. Contract § 8.3.1.4. states: "<u>Builder shall deliver...ALL CERTIFICATES including</u> BUILDER'S CERTIFICATION and <u>CLASSIFICATION CERTIFICATES</u> required to be furnished upon delivery of the Vessel pursuant to the Contract. It is agreed that if, through no fault on the part of Builder [Irving], the certificates are not available at the time of delivery of the Vessel, provisional certificates shall be accepted by the Owner, provided that Builder shall furnish the Owner [Pearl Seas] with final certificates as promptly as possible . . . ."

(underscoring supplied).  This requirement is also in the Specification 1320.2 which

provides:

> The Contractor shall obtain and deliver all required
> certificates and classification reports, etc, as required by
> either the <u>flag state</u> or <u>the classification society</u>.
> (underscoring added)

**C.      The Dispute Resolution Clause and Other Relevant Contract Clauses**

17.      Article XIV of the Contract is entitled "Dispute and Arbitration" and

provides for arbitration in New York (Contract § 14.2.1) in accordance with the Rules of

the Society of Maritime Arbitration, Inc.  (Contract § 14.2.3).  The law applicable to the

Contract is the law of the Province of Nova Scotia and Canada.  Contract § 21.1.

18.      The arbitration clause prohibits the arbitrators from determining any

disputes relating to the Vessel's compliance with the rules and regulations of the

Classification Society or other regulatory bodies.  Contract § 14.1.1.2 has a specific carve

out as to the arbitrators' authority:

> Any dispute concerning the Vessel's compliance or non-
> compliance with the rules and regulations of the
> Classification Society or other regulatory body <u>shall be
> referred</u> to the Classification society or other regulatory
> body, as the case may be, the decision of which shall be
> <u>final and binding</u> upon the parties hereto.  (underscoring
> added)

19.      The Contract also provides that, with respect to other contractual issues

(<u>i.e.</u> not relating to regulatory compliance), evidence would be presented at arbitration

hearings which would conclude within ninety (90) days.  Contract § 14.2.1.  ("The

arbitrators and the parties shall use all commercially reasonable efforts to conclude the

hearings within ninety (90) days after the appointment of the third arbitrator.")

20.     The parties intended to permit judicial review of finding of law or mixed

fact and law.  Contract § 14.3.1 provides in relevant part:

> The award of the arbitrators or an agreed or appointed
> surveyor acting as arbitrator shall be binding on the parties;
> provided that either party may appeal to any court of
> competent jurisdiction on any finding of law or mixed fact
> and law . . . .

## THE PANEL'S REFUSAL TO RULE ON NOISE AND VIBRATION
### A.     Pearl Seas' Early Concerns About Noise

21.     By October 2007, prior to the completion of construction the Vessel, the

parties' respective experts had each confirmed that noise levels of the Vessel would

vastly exceed limits permitted by the Specifications.[5]  Pearl Seas reiterated its concerns

about noise throughout the construction the Pearl Mist, including on weekly conference

calls and during in-person meetings with Irving in Connecticut and Nova Scotia.

22.     The Panel was therefore constituted in 2008 to resolve this and other

disputes related to physical defects that were already apparent on the Vessel.  Irving

appointed Louis P. Sheinbaum, a maritime attorney, as an arbitrator.  Pearl Seas

appointed David A. Nourse, a practicing maritime attorney, as an arbitrator.  The two

arbitrators appointed John M. Woods, a practicing maritime attorney, as the third

arbitrator and Chairman on July 11, 2008.

---

[5] Irving's noise consultant provided various noise reports to Irving in late 2007, which are Owner's
Arbitration Exhibits 24.

6734763.3

-11-

23.   On August 21, 2008, prior to completion of construction, Pearl Seas moved the Panel to find (among other relief) that Irving had anticipatorily breached the Contract's noise specifications because the Vessel (then two months late) would clearly and substantially fail to meet the noise specifications and to order Irving to take appropriate corrective actions while the corrections still could be accomplished without undue expense.[6]   The Panel in its February 9, 2009 Partial Final Award deferred ruling on the noise issue until after the Vessel's sea trials, as discussed below.

**B.      The February 9, 2009 Partial Final Award**

24.      Notwithstanding Pearl Seas' early request, the Panel, in its February 9, 2009 Partial Final Award, determined that the appropriate time to assess whether the Vessel's noise levels met the Contract's noise specifications was <u>at sea trials</u>.  The Panel was explicit that the sea trial procedure shall apply stating:

> [W]hether the ship as built will comply with the noise and vibration specifications cannot be determined until the vessel's sea trials.  At that time, the Contract spells out the procedure for determining whether the ship conforms to the applicable specifications, and the owner's remedies in the event that it does not.[7]

25.      While Pearl Seas did not agree with the Panel's February 9, 2009 decision, Pearl Seas relied on that ruling as it had every right to do.  Because time is of the essence under the Contract, Pearl Seas properly understood that if the Vessel at sea trials did not meet noise and vibration specifications, Irving as per Contract § 7.4.3 would promptly correct the deficiencies and the Panel would enforce Irving's 30 to 60-day cure period

---

[6] Irving's noise consultant provided various noise reports to Irving in late 2007, which are Owner's Arbitration Exhibits 24.

under Contract § 11.2.1 and abide by its obligation under the Contract to make all reasonable efforts to resolve this dispute within 90 days.

**C.    Failure at Sea Trials**

26.    Sea trials in Spring 2009 confirmed that noise levels were well above the Specifications and, in some areas of the Vessel, so loud as to be unsafe to personal health.[8]  Nevertheless, Irving tendered the Vessel for delivery on May 6, 2009 and Pearl Seas rejected the Vessel on May 8, 2009.[9]

27.    Pearl Seas participated in further sea trials on May 20-21 and June 18-19, 2009 to determine, in part, whether Irving had taken corrective actions on noise issues within its cure period.  Both parties' experts confirmed during these sea trials that there were undisputed significant noise exceedances.[10] At that time, Pearl Seas' expert concluded that noise levels were still "considerably above the specified levels in many areas of the ship" and "will most likely cause passenger[s] complaints."[11]

28.    Nor did Irving take further corrective actions.  Indeed, noise on the Vessel actually worsened after sea trials because on June 19, 2009 Lloyd's Register required Irving to remove certain sound insulation materials that did not comply with SOLAS fire regulations.

---

[7] Appx. to 8/11/10 Petition, Ex. 10, p. 2.
[8] Pearl Seas' noise expert prepared a noise report from all sea trials, which is dated August 14, 2009 and was submitted as Owner's Arbitration Exhibit 72.
[9] Appx. to 8/11/10 Petition, Exhibits 11 and 12.
[10] Owner's Arbitration Ex. 72.  Irving's expert concurred with Pearl Seas' expert regarding noise measurements.  Its report is Exhibit 1 to the September 28, 2009 declaration of Stephen Hammond.
[11] Owner's Arbitration Ex. 72, p. 1.

6734763.3

29.    The Marshall Islands rejected the Vessel for Marshall Islands flag (a requirement of the Contract) on November 24, 2009. The Flag State specifically based its decision in part on the excessive noise levels on the Vessel.[12]

**D.    November 9, 2010 Partial Final Award**

30.    On November 9, 2010, the Majority rendered the Partial Final Award ("11/9/10 PFA"[13]) that is a subject of this Petition. Mr. Nourse submitted a well-reasoned seven-page dissent ("11/9/10 Dissent"[14]). The subject of the 11/9/10 PFA, which the Panel characterized as the "Deliverability" issue, was whether the alleged physical deficiencies of the Vessel are proper grounds for rejection of the Vessel by Pearl Seas.

31.    The Panel Majority (a) found that Pearl Seas is not entitled to reject the Vessel on the basis of the Vessel's alleged physical deficiencies but Pearl Seas could present claims for price adjustment for the alleged deficiencies; (b) as to the noise exceedence issue, ruled that it "will not rule on any aspect of the[noise] issue until it is determined whether or not the [new] propellers in fact provide a fix"; and (c) did not rule on the consequences of Irving's failure to obtain Class Certification and regulatory approvals, which issue was also before them.

32.    Among the reasons why the 11/9/10 PFA issued by the Panel's Majority should be vacated is because the Majority so imperfectly executed their powers in failing to render a mutual, final and definite award upon the subject of excessive noise and

---

[12] Appx. to 8/11/10 Petition, Ex. 27.
[13] Appx. to 8/11/10 Petition, Ex. 62.
[14] Appx. to 8/11/10 Petition, Ex. 63.
6734763.3                                                    -14-

vibration, and the Majority exceeded their authority under the Contract by improperly
extending ad infinitum the time Irving had to meet the Contract's noise and vibration
Specification.[15]

33.    The Panel Majority 11/9/10 PFA did not rule on the "noise" issue but
found with respect to noise as follows:

> The Panel is not in a position to rule on any aspect of Pearl
> Seas' noise complaint, particularly given that the Panel has
> been advised that new propellers were ordered and were to
> be shipped to the Vessel in September.  (Irving
> Shipbuilding's Reply Memorandum on Deliverability,
> dated July 16, 2010, at 6 n.3.)  Because there is a dispute as
> to whether the new propellers will solve the noise and
> vibration problems, the Panel will not rule on any aspect of
> the issue until it is determined whether or not the propellers
> in fact provide a fix.[16]

34.    The Majority's failure to rule on noise in the 11/9/10 PFA violates the
Federal Arbitration Act in numerous respects.  9 U.S.C. § 10(a).  First, the Majority
exceeds its powers by rewriting the Contract, which contains explicit requirements for the
delivery date, condition of the Vessel at delivery, and the maximum cure period available
to Irving.[17]  Second, by failing to rule despite numerous requests, the Majority has
exceeded its powers by disregarding and improperly reversing its earlier February 9, 2009
Partial Final Award that the excessive "noise" issue would be decided at sea trials.

35.    Notwithstanding that it was uncontroverted that the Vessel had failed sea
trials, the Majority reversed course and disregarded its own February 9, 2009 PFA, which

---

[15] Specification 5040.
[16] Appx. to 8/11/10 Petition, Ex. 62, p. 3.

held that the relevant time to determine Irving's default was at sea trials. Instead, on November 9, 2010, <u>eighteen months</u> after Irving tendered the Vessel for delivery with undisputed major noise exceedances, the Majority sidestepped the issue of noise and vibration and simply declined to issue the only possible ruling it could make. The Panel Majority plainly ignored its February 9, 2009 ruling on the appropriate procedure for compliance with the Contract's noise specifications.

36.     Irving did not correct the noise deficiencies within 60 days of Pearl Seas May 8, 2009 notice as required by Contract §§ 7.4.3 and 11.2.1. Rather, midway through the briefing and hearing, Irving's counsel belatedly alleged that Irving had ordered new propellers in January 2010 to try and reduce noise levels.[18] Irving has apparently not received, installed or tested this alleged "fix." As arbitrator David Nourse stated in his dissent, the Majority's actions on noise and the Vessel's other physical defects "make a mockery of a carefully drafted commercial agreement" and provide Irving with "time to cure deficiencies ad infinitum."

37.     The Panel Majority's "non-ruling," by its own terms, recognizes that there was an excessive noise problem and that the Vessel did not meet the Contract's noise specification, when they ruled that they will not rule on any aspect of the issue until "it is determined whether or not the propellers in fact provide a fix."[19]

---

[17] See Contract § 8.1.1 (Appx. to 8/11/10 Petition, Ex. 1); Way Forward Agreement (Appx. to 8/11/10 Petition , Ex. 3) (stating delivery Date of May 29, 2008); Contract Specification 1016. Pursuant to Specification 1016, the Vessel was to be in condition for immediate service at that date. Irving did not provide its notice of completion until May 6, 2009 (Appx. to 8/11/10 Petition, Ex. 11).
[18] Appx. to 8/11/10 Petition, Ex. 62, p. 3; Ex. 63, p. 5-6.
[19] Appx. to 8/11/10 Petition, Ex. 62, p. 3.

38.     As correctly stated by Mr. Nourse in his dissent, there could be no doubt that the consequences of the excessive noise and vibration was to render the Vessel unsuitable for its intended service:

> These conditions were the subject of testimony from numerous witnesses during the hearings held in February, March and April of this year. This evidence shows, conclusively, that the measured conditions on the Vessel substantially exceed the maximum noise levels set by the Specifications for the galley, the dining room, 21 staterooms...as well as outdoor assembly spaces....
>
> the evidence submitted to us confirms that the conditions on the Vessel will make conversation in the dining room, public spaces [outdoor decks] and many of the staterooms difficult, if not impossible. In these circumstances there is no doubt that the excessive noise and vibration conditions both materially interfere with the Vessel's intended operations and, indeed, make it unsuitable for its contemplated use as a passenger cruise vessel.[20]

39.     Only one ruling on noise was permissible under the Contract and the Panel's February 9, 2009 PFA. However, the Majority in its 11/9/10 PFA instead rewrote the Contract disregarding its prior ruling, plainly exceeding their powers. Instead of honoring their own prior ruling, the provisions of Clause 7.4 concerning sea trials and the specific language in the Contract concerning Irving's cure period, the Panel Majority instead improperly provided Irving with an open ended extension of time to correct the noise exceedances on the Vessel and left Pearl Seas without a remedy.

40.     The Panel, having recognized in its February 9, 2009 PFA Pearl Seas' remedies for Irving's failure to meet the Contract's noise specifications under Clause 7.4

---

[20] Appx. to 8/11/10 Petition, Ex. 63, p. 5.

6734763.3                                            -17-

of the Contract,[21] has no power to modify that decision or expand the strict contractual deadlines set forth in the Builder's Right to Cure Default, Contract § 11.2.1 (Ex. 1). The Panel rewrote the Contract when it found in the 11/9/10 PFA that Contract § 7.4.3 does not allow Pearl Seas to reject the Vessel, because the Contract required "turnkey" delivery of a Vessel that met the Specifications on a date certain; because the lack of regulatory certificates and approvals gives Pearl Seas an absolute right to reject the Vessel; because noise and vibration exceedences are prima facie neither "cosmetic" nor "subject to prompt correction" where they are still uncorrected approximately eighteen months after Irving's tender of the Vessel nor issues that "do not materially interfere with the intended operation and trading of the Vessel."

41.     The Panel is empowered, at most, to provide Irving with 30 days following an award to cure a default. See Contract § 14.2.5. Here, the Panel has exceeded its powers by rewriting the Contract to provide Irving as much time as possible (now over two years) to resolve the failure to meet the Contract's noise specifications, which makes the Pearl Mist useless for its intended purpose.

42.     As was correctly stated by the dissenting arbitrator Nourse in his November 9, 2010 dissent, the issue of the Vessel's excessive noise and vibration was presented to the Panel as early as August 21, 2008:

> This arbitration was commenced by Pearl Seas on August 21, 2008, more than 8 months prior to Irving's tender of delivery of the Vessel in May 2009, respecting alleged breaches of the Contract, including excessive noise and vibration. The excessive noise and vibration conditions existing both before and after the tender of delivery were

---

[21] Appx. to 8/11/10 Petition, Ex. 10, p. 2, n. 1.

6734763.3

confirmed by inspectors acting for both parties.[22]

43.     The Panel Majority in tersely declining to rule on the issue of noise did not set any timetable for the time-consuming process of drydocking the Vessel, removal of the old propellers, installing or testing the new propellers.

44.     The Panel has therefore improperly failed to rule on the subject matter submitted to it and failed to issue a mutual, final and definite award.  Its failure to do so can be explained only as evidence of the Majority's bias against Pearl Seas.

### THE MAJORITY'S REFUSAL TO TREAT AS FINAL AND BINDING THE VESSEL'S LACK OF REGULATORY APPROVALS

**A.     The Vessel's Undisputed Lack of Regulatory Approvals**

45.     It is undisputed that at the time of the attempted delivery, the Vessel lacked every required flag and regulatory approvals and classification certificates, final or provisional, much less "framed under glass."  See Contract § 8.3.1.4.

46.     On June 24, 2009, Lloyd's Register wrote to Pearl Seas confirming that Lloyd's was "unable to issue certification due to incomplete inspections, trials, SOLAS Exemption issues and Flag State Certification."  Pearl Seas submitted this letter to the Panel on June 29, 2009.[23]

47.     On August 6, 2009, the Marshall Islands wrote to Pearl Seas to state its inability to issue a flag to the Vessel due to various defects and unresolved regulatory

---

[22] Appx. to 8/11/10 Petition, Ex. 63, p. 5.
[23] Owner's Arbitration Exhibit 156.
6734763.3                                                                     -19-

violations.[24]  On August 13, 2009, the Marshall Islands reiterated this conclusion to

counsel for Irving.[25]

       48.     Irving failed to remedy these or other defects within the contractual cure

period.  See Contract § 11.2.1.  In fact, Irving has conceded that major SOLAS violations

existed on the Vessel.  For example, during the arbitration hearings in February, March

and April 2010, Lloyd's Register and Irving undertook an extensive inspection of the

Vessel behind almost all wall and ceiling paneling, identified hundreds of illegal fire

boundary pipe and wire penetrations and undertook major corrections.[26]  Irving

submitted its correction report to Pearl Seas and the Panel in May 2010.[27]  Additionally,

Irving and Lloyd's Register acknowledged that the stairways were not constructed to

SOLAS size requirements and submitted a request for a SOLAS "equivalency" or

"exemption" ruling to the Marshall Islands in May 2010.  The Marshall Islands turned

down the request on June 4, 2010.[28]  This issue remains unresolved.  In addition, on

March 2, 2010 the U.S. Coast Guard wrote to Pearl Seas to reiterate its concerns about

the Vessel's compliance with SOLAS regulations,[29] which are particularly serious with

regard to the fire rating of all ceilings.

---

[24] Appx. to 8/11/10 Petition, Ex. 18.
[25] Appx. to 8/11/10 Petition, Ex. 19.
[26] These actions were confirmed during testimony by Bud Streeter, a vice president of Lloyd's Register (Appx. to 8/11/10 Petition, Ex. 34, p. 2073) and ISI's quality assurance officer, Colin Johns (Appx. to 8/11/10 Petition, Ex. 36, p. 2884).  Pearl Seas' also outlined them for the Panel in the Declaration of John Womack dated March 24, 2010, Owner's Arbitration Ex. 316.
[27] Counsel for Irving submitted Lloyd's Register's report on resolution of various SOLAS violations on May 14, 2010.
[28] Appx. to 8/11/10 Petition, Ex. 56.
[29] Owner's Arbitration Ex. 296.
6734763.3

49.    The Vessel is currently in layup at Irving's dock in Shelburne, N.S., and <u>still</u> has not been certified by Lloyd's, the Marshall Islands or the U.S. Coast Guard as being in compliance with the law governing cruise passenger vessels.

**B.    The July 2, 2010 Partial Final Award**

50.    Pearl Seas sought termination of the Contract due to Irving's failure to obtain Class certification and regulatory approvals.  In various communications with Pearl Seas and Irving in July, August and September 2009, Lloyd's Register confirmed in writing that the Vessel still did not have the required Class or flag state certifications.[30] On September 23, 2009[31] therefore Pearl Seas submitted a new request for a ruling terminating the Contract due to Irving's material breach in failing to obtain Class certification and regulatory approvals.

51.    In its 7/2/10 PFA, which is the subject of a separate Petition to Vacate, the Panel Majority decided that Pearl Seas could <u>not</u> terminate or rescind the Contract due to lack of regulatory approvals because the Panel Majority found that lack of regulatory approvals was a "deliverability" issue and not a "termination" issue,[32] thereby further extending Irving's deadline until the Panel rends its "Deliverability Decision," which it did in November 2010.

---

[30] Appx. to 8/11/10 Petition, Ex. 16, Lloyd's Register report (re: defects and deficiencies in Pearl Mist), July 10, 2009, p.1.
[31] Appx. to 8/11/10 Petition, Ex. 24, Letter from D. Kennedy to Panel (re:  termination and other relief for uncured regulatory failures in Vessel).
[32] Appx. to 8/11/10 Petition, Ex. 5.

6734763.3

52.     The Majority on pages 11-12 of the 7/2/10 PFA made it clear that they will not terminate the Contract for the lack of Classification Society certification or regulatory approvals because in their view it is a "deliverability" issue.

> The lack of regulatory approvals is also not an issue which the Panel is presently in a position to conclude gives rise to a default entitling Pearl Seas to rescind the Contract . . . . Indeed, that question is very much in dispute and it is a dispute that the Panel is not empowered to rule on.  As the parties are aware, the Shipbuilding Contract specifically provides that the Panel may not rule on the issue of Class or regulatory compliance, as such disputes must be referred to the Classification Society or other relevant regulatory body for decision.  (Contract § 14.1.1.2)  Accordingly, the Panel has written to Lloyd's Register, seeking clarification on this point.  This is the first step in the process of determining whether or not the Owner may refuse to accept delivery, pursuant to Contract § 7.4.3 of the Contract.  It will be determined as a deliverability issue, however, not as a matter of termination or rescission of the Contract.  (underscoring added)

**C.     The November 9, 2010 Partial Final Award**

53.     The Panel Majority in their Deliverability Decision on November 9, 2010 ("11/9/10 PFA") without explanation did not rule on the consequences of Irving's failure to obtain Class Certification and regulatory approvals, which it previously characterized as a "deliverability" issue in the 7/2/10 PFA.

54.     Under the Contract, Pearl Seas has no obligation to accept delivery if the Vessel does not have Classification Society certification, flag state approval, and all regulatory approvals.  Contract § 7.4.3 provides:

> . . . Owner [Pearl Seas] shall be under no obligation to accept the Vessel if it does not comply with the

> requirements of the Classification Society or other
> regulatory bodies.

Pursuant to Contract § 8.3 and Specification 1007, regulatory approvals and certifications

are due at delivery. (The Panel, in a ruling on July 2, 2009, recognized these contractual

requirements and the explicit contractual requirement of Contract § 7.4.3 that prior to

delivery "the Vessel should be fully Classed by Lloyd's Register.")[33]

55.    Because the arbitration does not stay or extend the delivery date for failure

to cure issues of compliance with Class or regulatory bodies -- as those issues cannot be

determined by the Panel -- Irving's time to cure or obtain relief from the regulatory bodies

with jurisdiction has long since expired.  However, it is clear that the Panel is extending

the contractual cure date for Irving's compliance with Class, flag state and regulatory

approvals.  The Majority extended the delivery date in the PFA 07/2/10 by (incorrectly)

finding:

> With respect to the subsequent period of delay in delivery
> caused by this arbitration, it should be noted that Contract
> § 14.2.5 of the Contract specifically provides that no party
> should be considered in default under the Contract <u>during
> the pendency of arbitration proceedings relating to a
> disputed default</u>.  Thus the delay in delivery during this
> arbitration cannot be considered as a fact or giving rise to
> or contributing to any default by Irving Shipbuilding. PFA
> 7/2/10 p. 3.  (underscoring added)

56.    Pendency of these arbitration proceedings does not protect Irving from

default under the Contract because compliance or non-compliance with requirements of

Class, flag state and regulatory bodies is not subject to arbitration before <u>this</u> Panel.

Contract § 14.2.5 is not applicable because there are no pending proceedings before Class

---

[33] Appx. to 8/11/10 Petition, Ex. 14, Panel ruling (e-mail from John Woods) (re: lack of class certificates),

or the flag state.  Only the regulatory bodies with jurisdiction can extend deadlines to

supply such certificates and approvals.  Contract § 14.4.1.  The Majority has ruled in their

7/2/10 PFA that Pearl Seas may not terminate the Contact for delay, has characterized

Irving's failure to provide a Vessel with the necessary regulatory approvals as merely a

"delay," and has held that Pearl Seas' remedy is limited to nine weeks of liquidated

damages, even if Irving does not deliver a compliant Vessel for years.

57.     By not ruling in the 11/9/10 PFA on the consequences of Irving's failure to

obtain Class certification and regulatory approvals, the Majority has once again

effectively (1) extended the contractual cure period for Irving to obtain Class certification,

flag state approval and other regulatory body approvals, effectively rewriting the Contract

to benefit Irving and (2)  imposed the entire cost of a two-year delay and lengthy and

burdensome arbitration process on Pearl Seas, because, if the Majority's rulings are not

corrected, Pearl Seas can obtain no damages or other compensation under the Partial

Final Award dated December 28, 2009, other than under the nine weeks of liquidated

damage for delay in delivery provision of the Contract.

58.     Pearl Seas has objected to these repeated delays and failures to rule.  Pearl

Seas wrote to the Panel on May 20, 2009 after sea trials and reiterated its request that the

Panel rule on the noise violations on the Vessel, which Pearl Seas first submitted to the

Panel on August 21, 2008.[34]  As explained elsewhere in this Petition, the Panel promised

to rule on the issue after sea trials and yet has failed to rule to this day.  Pearl Seas also

wrote to the Panel on March 11, 2010 and asked them to make a decision on Pearl Seas'

---

July 2, 2009.
6734763.3

September 23, 2009 request to terminate the Contract due to unresolved regulatory deficiencies and lack of class and flag certification.[35]   The arbitrators finally made a decision on the termination issue in the Partial Final Award dated July 2, 2010, but to this day have not made a decision as to whether Irving is in default for not obtaining Lloyd's Class certification, Marshall Islands approval and other regulatory approvals.  The Majority committed misconduct by failing to decide an issue in the "Deliverability" decision on 11/9/10 PFA with an obvious answer.  Class certification, Marshall Islands approval, SOLAS compliance and other regulatory approvals are obviously material requirements of the Contract because without them the Vessel cannot carry passengers on its intended service and route.

### D.   The November 19, 2010 "Clarification" of the November 9, 2010 Partial Final Award

59.   On November 19, 2010, the Majority (Messrs. Sheinbaum and Woods) rendered a so-called "clarification" of their November 9, 2010 Partial Final Award.  Mr. Nourse submitted a two-page dissent dated November 19, 2010.  The November 19, 2010 "Clarification" of the 11/9/10 PFA was requested by Irving in a letter to the Panel dated November 15, 2010 when Irving asked the Majority  to (a) rule on Irving's claim that Pearl Seas communications with regulatory bodies constitute illegal "interference;" (b) modify its 11/9/10 PFA by explaining the scope of the regulatory issues that the Majority is leaving to this Court to decide; and (c) enjoin Pearl Seas from communicating with the

---

[34] Owner's Arbitration Ex. 151.
[35] Appx. to 8/11/10 Petition, Ex. 34.
6734763.3

regulators.[36]  Pearl Seas did not consent to and opposed Irving's request for modification of the 11/9/10 PFA.

60.     On November 19, 2010, the Majority modified the PFA 11/9/10 and indicated its intent to decide the "regulatory authority question" ("interference" issue) unless prohibited by this Court from doing so.  The Majority stated its intention to "proceed further to obtain the requested advice from the Classification Society, and proceed to determine the application of Irving with respect to [Marshall Islands] approval"[37] following this Court's ruling.

61.     In an extraordinarily frank critique of his fellow arbitrators, dissenting Arbitrator Nourse further underscored the evident partiality of these actions by forthrightly stating that "the majority arbitrators ... are clearly acting at the request of Irving ... and with the apparent goal of assisting Irving in the context of the on-going litigation ... in the U.S. District Court for the District of Connecticut."[38]

62.     The Majority's "Clarification" of the 11/9/10 PFA should be vacated because, as discussed in more detail below, the arbitrators were *functus officio* and did not have authority to modify their prior award.  As recognized by Dissenting Arbitrator Nourse, the Majority's 11/19/10 clarification "clearly is not authorized" because (1) the "arbitrators, having made their award, are *functus officio* and without the power to change

---

[36] Appx. to 8/11/10 Petition, Ex. 64, November 15, 2010 letter from S. McDermott to Panel.
[37] Appx. to 8/11/10 Petition, Ex. 68; with regard to the information sought from Lloyd's Register, the Majority seeks to take testimony from Simon Grice, a staff member of Lloyd's Register.  Compliance with classification requirements is evidenced by the issuance of class certificates pursuant to Contract § 8.3 and Specification 1007 not through the Majority's evaluation of fact testimony from a staff person at Lloyd's Register.  If, as Irving suggests, Lloyd's Register cannot issue final classification certificates because of Pearl Seas' refusal to accept delivery of the Vessel, Lloyd's Register routinely issues temporary certificates in those circumstances, which is contemplated by Contract § 8.3.1.4.

it...", (2) the arbitrators "do not have the authority to modify or 'clarify' their decision"[39] and (3) it was done at Irving's request with the goal of assisting Irving in the litigation before this Court. Indeed, the 11/19/10 "Clarification" is further evidence of the Panel Majority's evident partiality and manifest disregard of the law because the lack of authority of the Panel Majority to "clarify" a prior "partial final" award had been pointed out to them both by Pearl Seas and the Dissenting Arbitrator Nourse.

63.     Nevertheless, in the 11/19/10 "Clarification," the Panel Majority reversed course from the Panel's recognition in the 11/9/10 PFA that they were leaving "...the regulatory authority question to be determined by the Court...." Instead, in the 11/19/10 "Clarification", the Majority asserted that they believe they have authority to determine the "regulatory authority question," and indicated that it would do so if this Court does not determine the arbitrability of that issue "in the course of ruling on the Petition."

64.     Accordingly, Pearl Seas requests a declaratory judgment by this Court that the Panel may not determine issues of Class or regulatory compliance, because such issues are not arbitrable before the Panel under the Contract's Disputes clause and a declaratory judgment that the 11/19/10 "Clarification" was improper.

### THE MAJORITY'S EVIDENT PARTIALITY

65.     The Majority's refusal to acknowledge Irving's failure to deliver a Vessel in May 2009 that complied with the Contract's Specifications and its continuing failure to provide any remedy to Pearl Seas is inexplicable other than to conclude the Panel

---

[38] Appx. to 8/11/10 Petition, Ex. 69.
[39] Appx. to 8/11/10 Petition, Ex. 69, Dissent 11/19/10 p. 1.

Majority are biased in favor of Irving.  As the dissenting arbitrator Nourse stated on

November 9, 2010:

> It is now nearly 30 months after the Vessel should have
> been delivered.  There is no justification for the majority
> arbitrators to ignore or disregard time limitations for
> performance which were built into the Contract and,
> effectively, extend Irving's time to cure deficiencies ad
> infinitum.  To do so makes a mockery of a carefully drafted
> commercial agreement, turning the requirement for
> performance by a date certain into performance manana,
> and opens the door to charges of evident partiality.[40]

66.    The Majority's frequent gratuitous snipes at Pearl Seas provide further

evidence of its evident partiality.  For example, the Majority speculates that "Pearl Seas'

continued obstruction" of the Majority's efforts to solicit information from Lloyd's

Register, an inquiry that Pearl Seas viewed as impermissible, "was clearly designed to

avoid a response from Lloyd's Register that may well have been unfavorable to Pearl

Seas."[41]

67.    What the Majority terms "continued obstruction" is actually Pearl Seas

exercising its absolutely proper rights and duty to challenge the Panel's conduct when

that conduct is not proper and beyond their powers.  Pearl Seas therefore asks this Court

to vacate the 11/9/10 PFA because the Majority has (a) exceeded its authority by

amending contractual cure periods and deadlines, including for noise violations; (b) failed

to rule on the subject matter submitted; (c) failed to issue a mutual, final, and definite

award; and (d) demonstrated evident partiality in such actions.

---

[40] Appx. to 8/11/10 Petition, Ex. 63, p. 6.
[41] Appx. to 8/11/10 Petition, Ex. 62 , p. 2, n. 1
6734763.3                                                                    -28-

68.     The Panel Majority in their 11/9/10 PFA on "deliverability" issues did not

rule on the consequences of Irving's failure to obtain Class Certification and regulatory

approvals, which it characterized as a "deliverability" issue in the 7/2/10 PFA.  Pearl Seas

submitted the issue of Irving's failure to obtain regulatory approvals in its September 23,

2009 request for termination of the Contract.

## COUNT ONE
## PETITION TO VACATE PURSUANT TO 9 U.S.C. § 10(A)(4)

69.     The allegations contained in paragraphs 1 to 68 of this Petition are

repeated and realleged with the same force and effect as if set forth fully herein.

70.     The FAA, at 9 U.S.C. § 10(a)(4), provides for vacatur of an arbitral award

where the arbitrators exceeded their powers or so imperfectly executed those powers that

a mutual, final and definite award on the subject matter submitted to the arbitrators was

not made.

71.     Contract § 14.1.1.2 provides that disputes concerning compliance or non-

compliance with the rules and regulations of the Classification Society or other regulatory

body shall be referred to the Classification Society or other regulatory body, whose

decision shall be final and binding.

72.     The Contract does not contain clear and unmistakable language

committing decisions concerning classification or compliance with regulatory body

requirements to the arbitrators.

73.     In the absence of a clear and unequivocal allocation of the authority to

decide issues relating to Classification or regulatory issues to the arbitrators, the

6734763.3                              -29-

determination of the arbitrability of these issues is assigned to this Court, not to the arbitrators.

74.     As a matter of contract law, Pearl Seas did not submit to the arbitration before the Panel of issues relating to Class, flag state, or U.S. Coast Guard regulatory compliance.

75.     The Panel has determined issues relating to Class and regulatory compliance.

76.     The Panel has already commenced its own investigation into compliance with Class requirements and stated its intention in the 11/19/10 PFA to proceed further. Moreover, this was done after the submission of briefs and when the matter was <u>sub judice</u>.

77.     The determination of whether Irving is entitled to an extension of the delivery date as a result of disputes concerning Class, flag, and regulatory approvals for any reason is allocated by the Contract to the "absolute discretion" of the applicable regulatory bodies, and only when such relief is sought by Irving during the cure period, which Irving failed to do.

78.     The Majority has declared its unmistakable intention to delve further into regulatory issues, weight the validity and merits of various regulatory disputes and take testimony from staff of Lloyd's Register.

79.     The Panel exceeded its authority in making such determinations.

80.     The Panel Majority has extended deadlines for delivery and deadlines for Irving's obtaining class, flag state and regulatory approvals that were due at delivery on May 9, 2009.

81.     The Panel Majority also exceeded its authority in issuing the 11/19/10 "Clarification" of the 11/9/10 PFA because the Panel was *functus officio*.

82.     The Panel Majority exceeded its authority in issuing the PFAs after its time for making an award had expired, where the parties agreed that time was of the essence, and where the Panel's delay caused prejudice and actual harm to Pearl Seas and Pearl Seas repeatedly objected to the Panel's delay.

83.     Petitioner is entitled to vacatur of the November 9, 2010 and November 19, 2010 Partial Final Awards pursuant to 9 U.S.C. § 10(a)(4) on the grounds that (a) the Majority violated 10 U.S.C. § 10 by repeatedly refusing to rule on the issues submitted to them in a timely manner despite objections by Pearl Seas and consequential prejudice and damage to it and (b) the Majority so imperfectly executed their powers by reason of refusing to rule and extending deadlines indefinitely for delivery of a vessel that conforms to contractual requirements that a mutual, final and definite award on the subject matter submitted to them was not made, in violation of 9 U.S.C. § 10.

## COUNT TWO
## PETITION TO VACATE PURSUANT TO 9 U.S.C. § 10(A)(3)

84.     The allegations contained in paragraphs 1 to 83 of this Petition are

repeated and realleged with the same force and effect as if set forth fully herein.

85.     The FAA, at 9 U.S.C. § 10(a)(3), provides for vacatur of an arbitral

judgment where the arbitrators committed misconduct in refusing to postpone the

hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and

material to the controversy; or of any other misbehavior by which the rights of any party

have been prejudiced.

86.     The Majority arbitrators committed misconduct by ignoring the

requirement to undertake "all commercially reasonable efforts" to conclude all hearings

within 90 days; by refusing to authorize discovery or hear evidence concerning Pearl

Seas' claim of Irving's intentional delay in its performance of its obligations under the

Contract; by commencing their own investigation on issues outside their jurisdiction; by

initiating ex parte conduct with Bud Streeter of Lloyd's Register, after hearings had

closed, without the consent of Petitioner, on the issue of compliance of the Vessel with

Class requirements; by making a determination on the issue of interference with the

Classification and regulatory processes and of Classification and regulatory compliance;

and by not promptly deciding the issue of termination, by holding Petitioner's request to

terminate the Contract in abeyance, and by not promptly deciding whether Irving was in

default by its failure to obtain class or regulatory approval.

87.     The Majority also committed misconduct by issuing its 11/19/10 Clarification of the 11/9/10 PFA when the Panel was *functus officio*.

88.     The above-listed improprieties by the Panel have been prejudicial to Pearl Seas because the findings with respect to Classification, flag state and regulatory compliance are critical to the issue of Irving's default; because extending the contractual cure period by refusing to decide the termination issue has imposed on Pearl Seas crushing and unnecessary arbitration costs as well as additional costs for financing Vessel construction, and has allowed Irving to strengthen its position in the arbitration through intentional delay for which (according to the Majority) Pearl Seas is entitled to no compensation beyond the nine-week Liquidated Damages period.

89.     The Panel's misconduct and misbehavior, as described above, amounts to a denial of fundamental fairness in the proceeding, and renders the resulting arbitral decision biased, irrational or arbitrary.

90.     Accordingly, Pearl Seas is entitled to vacatur of the November 9, 2010 and November 19, 2010 Partial Final Awards pursuant to 9 U.S.C. § 10(a)(3) and this Court should rule that Pearl Seas may terminate the Contract.

## COUNT THREE
## PETITION TO VACATE FOR MANIFEST DISREGARD OF LAW

91.     The allegations contained in paragraphs 1 to 90 of this Petition are repeated and realleged with the same force and effect as if set forth fully herein.

92.     The FAA, at 9 U.S.C. § 10, provides for vacatur of an arbitral judgment where the arbitrators have manifestly disregarded the law.

93.    The applicable law governing the issue of termination of the Contract due to Irving's failure to obtain Lloyd's Register Class certification and other regulatory approvals at the time it tendered the Vessel to Pearl Seas by Irving was clear, as demonstrated in the letter brief on this issue submitted by Pearl Seas to the Panel on September 23, 2009.

94.    This error by the Panel with respect to termination is an error of law so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator. Here, in fact, the arbitrators were all highly experienced attorneys.

95.    The Majority's analysis strains credulity and does not rise to the standard of barely colorable.

96.    The erroneous application of governing law led to an erroneous outcome, in which the November 9, 2010 and November 19, 2010 Partial Final Awards refuse to recognize Pearl Seas' right to terminate the Contract, despite years of intentional delay by Irving.

## COUNT FOUR
## PETITION TO VACATE FOR EVIDENT PARTIALITY

97.    The allegations contained in paragraphs 1 to 96 of this Petition are repeated and realleged with the same force and effect as if set forth fully herein.

98.    The Majority Arbitrators acted at Irving's request in issuing the 11/19/10 Clarification.

99.    Dissenting Arbitrator Nourse recognized that the Majority issued that 11/19/10 Clarification to assist Irving in this litigation.

6734763.3                                    -34-

100.  Dissenting Arbitrator Nourse recognized the Majority's evident partiality.

101.  Taken cumulatively, the July 2, 2010, November 9, 2010 and November 19, 2010 Partial Final Awards demonstrate the Majority's evident partiality by rewriting the Contract to Irving's benefit.

## COUNT FIVE
## PETITION TO VACATE PURSUANT TO THE NEW YORK CONVENTION

102.  The allegations contained in paragraphs 1 to 101 of this Petition are repeated and realleged with the same force and effect as if set forth fully herein.

103.  Article V, Paragraphs 1 and 2 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), provide that recognition of an award may be refused if the award "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions or matters beyond the scope of the submission to arbitration;" if "the arbitral procedure was not in accordance with the agreement of the parties . . ."; or if recognition of the award would be contrary to the public policy of the forum.

104.  Petitioner is entitled to vacatur of the Partial Final Awards because they deal with matters not falling within the terms of and beyond the scope of the submission to arbitration; because the arbitral procedures were not in accordance with the parties' arbitration agreement; and because enforcement would violate the public policies of the United States.

WHEREFORE, Pearl Seas, the Petitioner, Pearl Seas, respectfully prays this Honorable

Court to:

1.     Vacate the November 9, 2010 and November 19, 2010 Partial Final

Awards and terminate the Contract;

2.     Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Panel

may not determine issues of Class or regulatory compliance or to extend deadlines for

Class or regulatory compliance;

3.     Stay further arbitration proceedings by the Panel as presently constituted

pursuant to 9 U.S.C. § 3;

4.     Direct the parties to appoint new arbitrators; and

5.     Grant such other relief as this Court deems just and proper under 9 U.S.C.

Chapter 1 and 28 U.S.C. § 2202.

PETITIONER,
PEARL SEAS CRUISES, LLC,

By: _____
Madeleine F. Grossman
Federal Bar No. ct05987
Frank J. Silvestri, Jr.
Federal Bar No. ct05367
Candace V. Milligan
Federal Bar No. ct27826
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
P.O. Box 5116
Westport, CT  06881
Telephone:  (203) 222-0885
Facsimile:  (203) 226-8025
Email: mgrossman@levettrockwood.com
Email: fsilvestri@levettrockwood.com
Email: cmilligan@levettrockwood.com

OF COUNSEL:

Donald J. Kennedy
Christopher Rizzo
Judith M. Wallace
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, NY  10005
Telephone:  (212) 732-3200
Fax:  (212) 732-3232
Email:  kennedy@clm.com
Email:  rizzo@clm.com
Email:  wallace@clm.com