UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------X
                                                             :
PEARL SEAS CRUISES, LLC,                                     :     CIVIL ACTION NO.
                                                             :     3:11-CV-0201 (JBA)
        Petitioner,                                        :
                                                             :
    v.                                                      :
                                                             :
IRVING SHIPBUILDING INC.,                                    :
                                                             :
        Respondent.                                        :
                                                             :     June 17, 2011
-------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO IRVING SHIPBUILDING'S
MOTION TO DISMISS PEARL SEAS' PETITION TO VACATE THE
NOVEMBER 2011 ARBITRAL AWARDS AND
FOR DECLARATORY JUDGMENT**

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005
————
(212) 732‑3200

6801562.6

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

STANDARD OF REVIEW ............................................................................3

ARGUMENT ...............................................................................................4

A.  THE ARBITRATORS' FAILURE TO RULE IS CONTRARY TO THE
    EXPECTATION OF THE PARTIES, HAS FRUSTRATED THE
    RESOLUTION OF DISPUTES AND THE ARBITRATION AGREEMENT
    SHOULD BE DECLARED UNENFORCEABLE. ....................................4

    1.  Arbitrators Must Rule Within a Reasonable Time.............................5
    2.  The Court Has Authority to Vacate an Award for Failure to Rule .......6
    3.  Time Was of the Essence and The Contract Sets Deadlines for Delivery of
        the Vessel and Any Dispute Resolution by Arbitrators .....................7

B.  THE ARBITRATORS HAVE FAILED TO RULE ON NOISE AND
    VIBRATION WITHIN ANY REASONABLE TIME LIMIT ....................8

    1.  The Arbitrators Have Failed to Rule on Undisputed Noise and Vibration
        Exceedances After Sea Trials or Otherwise For Three Years and Have
        Refused to Enforce Delivery Deadlines...........................................8
    2.  Hearings Addressing Noise and Vibration Were Held .......................9
    3.  The July 2010 Award Sidestepped the Issue of Noise and Vibration.......10
    4.  The November 2010 Awards Refused to Rule on the Issue of Noise and
        Vibration ..................................................................................10

C.  THE ARBITRATORS HAVE FAILED TO RULE ON THE VESSEL'S LACK
    OF CLASS CERTIFICATION AND FLAG STATE APPROVAL WITHIN
    ANY REASONABLE TIME LIMIT .................................................11

    1.  The Contract Sets Deadlines for Class Certification and Flag State
        Approval and Does Not Authorize Arbitrators to Extend Deadlines for
        Regulatory Approvals or Disputes Concerning Regulatory Approvals.............12
    2.  The Arbitrators Have Failed to Rule on the Undisputed Failure to Secure
        Class and Flag State Approvals In its November "Deliverability" Award.........13

D.  THE COURT'S FEBRUARY 9, 2011 DECISION REGARDING FINALITY IS
    NOT DISPOSITIVE OF PEARL SEAS' CHALLENGE FOR FAILURE TO
    RULE ...........................................................................................14

    1.  A Finality Requirement Would Be Nonsensical for a Challenge on the
        Ground of Failure to Rule ............................................................15
    2.  Because the Court's February 9, 2011 Decision Did Not Address a Claim
        for Failure to Rule, the Decision Is Not Dispositive...........................16

E.  IRVING'S RULE 12(B)(6) MOTION MUST BE DENIED BECAUSE PEARL
    SEAS HAS STATED A VALID CHALLENGE ON THE GROUNDS OF
    FAILURE TO RULE ........................................................................16

CONCLUSION ...........................................................................................18

-i-

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arista Records LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)........................................................................3

*AT&T Mobility v. Concepcion*,
   131 S. Ct. 1740 (2011)..............................................................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................4

*Durgin v. Town of Madison*,
   No. 3:10-cv-347, 2011 WL 692989 (D. Conn. Feb. 18, 2011)....................................4

*Government of India v. Cargill Inc.*,
   867 F.2d 130 (2d. Cir. 1989)...................................................................5, 7

*Green v. Ameritech Corp.*,
   12 F. Supp.2d 662 (E.D. Mich 1998), rev'd on other grounds, 200 F.3d (6th
   Cir. 2000) .........................................................................................17

*Hasbro, Inc. v. Catalyst USA, Inc.*,
   367 F.3d 689 (7th Cir. 2004) ..............................................................6, 12

*I Appel Corp. v. Katz*,
   No. 02 Civ. 8879, 2005 WL 2995387 (S.D.N.Y. Nov. 9, 2005) ...................6, 15, 16, 17

*Koch Oil, S.A. v. Transocean Gulf Oil Co.*,
   751 F.2d 551 (2d Cir. 1985)......................................................................6

*Productos Mercantiles e Industriales S.A. v. Faberge USA, Inc.*,
   23 F.3d 41(2d Cir. 1994)..........................................................................3

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   130 S.Ct. 1758 (2010)............................................................................3

*Success Vill. Apartments, Inc. v. Amalgamated Local 376, Int'l Union United
   Auto. Aerospace and Agric. Implement Workers of Am., UAW*,
   380 F. Supp.2d 95 (D. Conn. 2005)......................................................6, 15, 16

6801562.6

*West Rock Lodge No. 2120, Int'l Ass'n of Machinists and Aerospace Workers,*
   *AFL-CIO v. Geometric Tool Co.,* 406 F.2d 284 (2d Cir. 1968)................................................15

### STATUTES AND RULES

9 U.S.C. § 1 *et seq* (Federal Arbitration Act). .................................................................3, 4, 15, 16

Fed.R. Civ.P. 12(b)(6)...........................................................................................................3, 4, 16, 17

Plaintiff Pearl Seas submits this memorandum of law in opposition to Defendant Irving Shipbuilding's motion to dismiss the Petition.[1]

## PRELIMINARY STATEMENT

Irving argues that the Court lacks jurisdiction over any petition to vacate by Pearl Seas until the arbitrators issue what they choose to designate as their final award.  At the same time, under Irving's view, the arbitrators can keep extending the contractual deadlines *ad infinitum* and keep the arbitration open.  This is the perfect Catch 22.  In Irving's view there can be no review of the arbitrators' actions until there is a final award and there is no recourse for any failure of the arbitrators to issue a final award.  This is not and cannot be the law.

The Panel's Partial Final Award of November 9, 2010 ("November PFA"), which is the subject of this petition, dramatically illustrates how far the arbitrators have strayed from the essence of the contract between the parties.  The contract set firm deadlines for delivery of the Vessel and established short cure periods for Irving.  Disputes sent to arbitration were to be presented at hearings that would conclude within 90 days.[2]  The arbitrators have simply disregarded the Contract without explanation.

For example, the Panel acknowledges a noise and vibration problem:  a problem of which Pearl Seas gave the Panel notice in 2007, which was submitted to arbitration in 2008 and which was documented and confirmed at sea trials in 2009.  Irving allegedly

---

[1]Pearl Seas objects to Irving's attempt to convert  the Motion to Dismiss, which was the subject of a pre-motion conference on April 19, 2011,  into a summary judgment motion [Docket item 31].  We also refer the Court to Pearl Seas' memorandum of law dated February 7, 2011 submitted in support of Pearl Seas' Petition to Vacate [Docket item 6].

[2] *See* Pet. ¶ 19, Contract 14.2.1.

ordered a fix in the form of new propellers after expert testimony on the noise problem during an arbitration hearing in 2010 (propellers which still have not been installed on the vessel three years after the contractual delivery date).   Nevertheless, ignoring the contractual deadlines that expired three years ago, and without purporting to set a new deadline, the Majority of the Panel (the "Majority") simply ruled in its November 9, 2010 Partial Trial Award ("November PFA"):

> The Panel is not in a position to rule on any aspect of Pearl Seas noise complaint, particularly given that the Panel has been advised that new propellers were ordered and were to be shipped to the vessel in September [2010]. . . .  Because there is a dispute as to whether the new propellers will solve the noise and vibration problems, the Panel will not rule on any aspect of the issue until it is determined whether or not the propellers in fact provide a fix.[3]

Similarly, the contract requires that the vessel be delivered classed and flagged.  It still is neither classed nor flagged.  This is uncontroverted.   The Majority ruled that it would treat this as a "deliverability issue."   (July 2, 2010, Partial Final Award) Nevertheless, in the November PFA, which purported to decide "the deliverability" issue, the Majority of the Panel avoided the issue.

Apparently, whenever a decision would have to be unfavorable to Irving, the Panel avoids deciding the issue by ignoring the Contract and extending deadlines.  This is not contract interpretation.  It is contract revision.

---

[3] Pearl Seas intends to submit evidence during the hearings that Irving only ordered new propellers for the Vessel after the arbitrators' March 3, 2011 request for an update from Irving on the status of the new, noise-control propellers.  Counsel for Irving in a letter dated May 14, 2010, stated "...ISI...has ordered redesigned propellers to rectify the noise conditions...."   The Majority relied upon this representation in the July 2, 2010 partial final award (see note 7) and again in the November 9, 2010 partial final award (page 3).

As the Supreme Court noted in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1767 (2010), arbitrators are not free to dispense their own brand of industrial justice. Yet, the Majority in this case has effectively rewritten the parties' agreement by failing to issue a final award on issues presented to it and repeatedly extending deadlines without any contractual authority to do so.

Ironically, Irving argues that the court cannot review the November PFA because it is not final. It is precisely because it is not final -- three years after the contractual delivery date and almost three years after these issues were first raised with the arbitrators -- that the court should take jurisdiction of the petition and fashion the appropriate relief.

## STANDARD OF REVIEW

Irving has attacked Peal Seas' Petition with a motion to dismiss under Rule 12(b)(6)[4] of the Federal Rules of Civil Procedure ("FRCP"). On any such motion the court must accept factual allegations in the petition as true, draw all reasonable inferences in favor of the non-moving party, and construe the petition liberally, requiring only that "the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level'" and "'to state a claim to relief that is plausible on its face.'" *Arista*

---

[4] A motion to dismiss pursuant to Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(b)(6) is not an authorized method to oppose a petition to vacate an arbitral award under the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.* Pearl Seas has objected and reserves all its rights.

Fed. R. Civ. P. 81 provides that procedures set forth in the FAA preempt the Fed. R. Civ. P., and the FAA requires that a motion to vacate be made and heard in the form of a motion. Fed. R. Civ. P. 81(a)(6) states that the procedures of the FAA preempt the Federal Rules, providing that "[t]hese rules [i.e., the Fed. R. Civ. P.], to the extent applicable, govern proceedings under the following laws, except as these laws provide other procedures: ... (B) 9 U.S.C., relating to arbitration." The FAA, 9 U.S.C. § 6, in turn, requires that the procedure for a motion to vacate is a filing in form of petition and motion, providing that "[a]ny application to the court hereunder [i.e., under the FAA] shall be made and heard in the manner provided by law for the making and hearing of motions." *See, e.g, Productos Mercantiles e Industriales S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994).

6801562.6

*Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

The moving party (i.e., Irving) bears the burden of proof in a motion to dismiss under FRCP 12(b)(6). *Durgin v. Town of Madison*, No. 3:10-cv-347, 2011 WL 692989, *3 (D. Conn. Feb. 18, 2011). Since PSC's petition is presumed to be factually correct, including the allegation that regulatory bodies have made final and binding decisions to reject the Pearl Mist, it is Irving's burden to show that the petition does not state a cause of action notwithstanding the truth of the facts alleged. Irving must rely on the law, not a factual dispute, to make its case, and this it cannot do.

## ARGUMENT

**A.   THE ARBITRATORS' FAILURE TO RULE IS CONTRARY TO THE EXPECTATION OF THE PARTIES,    HAS FRUSTRATED THE RESOLUTION OF DISPUTES AND THE ARBITRATION AGREEMENT SHOULD BE DECLARED UNENFORCEABLE.**

The goals of arbitrations are lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes. All of these goals have been frustrated in this case.   Arbitration is a matter of contract and the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA") requires courts to honor the parties' expectations. In this case, those expectations are found in the Contract at Article XIV, Dispute and Arbitration, including:

- "all commercially reasonable efforts" would be made to conclude the hearing by ninety (90) days from the date the third arbitrator was appointed, which here was July 11, 2008 (§14.2.1)

- the pendency of arbitration proceeding "shall not justify" extension of the Delivery Date (§14.2.5)

6801562.6

- if a party was found in default by the arbitrators, that party would have a maximum of 30 days to cure the default (§14.2.5)

- the Contract's cure periods and deadlines would be enforced by the arbitrators

- in the event of a material breach of the Contract, the Contract would be terminated and Pearl Seas would get its money back

- there was a right to appeal the arbitrators' finding of law or mixed law and fact (§14.3).

In the broader commercial context of the Contract as a whole, it was the intention of the parties that a new passenger vessel would be delivered to Pearl Seas in May 2008 and under no circumstances would the Delivery Date be extended indefinitely. It was also Pearl Seas' expectation that in the event of Irving's failure to obtain Class Certification and Flag State approvals, which renders the Vessel useless for its intended service, Irving could not both keep Pearl Seas' $30 million and hold the Pearl Mist hostage for three years past the contractual Delivery Date with impunity.

As the Supreme Court observed, "The point of affording parties discretion in designing arbitration process is to allow for efficient, streamlined procedures tailored to the type of dispute." *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1749 (2011). The parties' intent should serve as the touchstone and the lodestar in deciding challenges to arbitral authority and "… the FAA requires courts to honor parties' expectations." *Id.* at 1752.

1.    *Arbitrators Must Rule Within a Reasonable Time*

The Second Circuit has stated, "[i]t cannot be gainsaid that an arbitrator's decision must be made within a reasonable time." *Government of India v. Cargill Inc.*,

867 F.2d 130, 134 (2d. Cir. 1989) (citing *Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir. 1985)).   Arbitrators may not "indefinitely delay issuance of an award, in open violation of [arbitral] rules, without the parties' consent." *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 693 (7th Cir. 2004) (finding delay was permissible where panel promptly ruled after one party objected to delay).   While an arbitral body, such as the AAA, can extend an arbitrators' deadline under the arbitral body rules, such a determination must be "within reasonable limits." *Koch Oil*, 781 F.2d at 554.

As set forth in Pearl Seas' Petition and the supporting Memorandum of Law, dated February 7, 2011 ("Pearl Seas Memo"), the Panel has refused to rule within a reasonable time on two major issues involving undisputed deficiencies in the vessel presented by the parties and ripe for a decision.

2.     *The Court Has Authority to Vacate an Award for Failure to Rule*

The Court has authority to vacate the Majority arbitrators' November PFA because Pearl Seas timely objected to the failure to rule and has been prejudiced.[5] Moreover, Pearl Seas' Petition is ripe because it had to be brought now.   Courts in the Second Circuit have repeatedly held that a party challenging a failure to rule must show they objected prior to the late award, in addition to showing harm from the lateness.[6] *See I Appel Corp. v. Katz*, No. 02 Civ. 8879, 2005 WL 2995387, at *8 (S.D.N.Y. Nov. 9, 2005), *Success Vill. Apartments, Inc. v. Amalgamated Local 376, Int'l Union United Auto. Aerospace and Agric. Implement Workers of Am., UAW*, 380 F. Supp.2d 95, 98 (D. Conn. 2005).   If Pearl Seas could not assert its claim now, Irving could maintain later that

---

[5] *See* Pet. ¶¶ 5, 58, 70, 83.

[6] The harm to Pearl Seas is discussed in detail at Point E, *infra*.

Pearl Seas' continued participation in the arbitration constitutes consent, notwithstanding Pearl Seas' repeated objections to the Majority arbitrators' jurisdiction and delay.

      3.    *Time Was of the Essence and The Contract Sets Deadlines for Delivery of the Vessel and Any Dispute Resolution by Arbitrators*

The Contract sets forth specific deadlines, and the extension of the Delivery Date and all cure periods and arbitration deadlines are measured in <u>days</u>.[7] Five-and-a-half years ago, Pearl Seas contracted for a Vessel to be delivered in May 2008 for immediate use in international overnight passenger service, in time for the 2008 summer cruise season.[8] The Contract § 11.2.1 gives Irving 60 days to cure defaults after notice by Pearl Seas.[9] The Contract provides that any arbitration hearings would conclude within 90 days after the appointment of the third arbitrator.[10] The Contract is clear that the pendency of arbitration proceedings would not warrant an extension of the "Delivery Date" (§ 14.2.5). If an extension of the Delivery Date is ever justified it would be "only for the number of <u>days</u>" the arbitrators determined (emphasis added).

Collectively, these contractual requirements confirm that the parties agreed that only short time limits, measured in days, were "reasonable" for any resolution of any dispute in arbitration. *See, e.g., Government of India*, 867 F.2d at 134.

As discussed in more detail at Point E, *infra*, Pearl Seas has been prejudiced because contractual deadlines have been ignored by the Majority and the Majority has ruled that Pearl Seas is not permitted to claim damages over and above nine weeks of

---

[7] *See* Pet. ¶ 12, 13, 19, 25; Pearl Seas Memo. at p. 19-21.

[8] *See* Pet. ¶¶ 5, 12, 13.

[9] *See* Pet. ¶ 25; Pearl Seas Memo. at p. 19.

[10] *See* Pet. ¶ 19.

liquidated damages, even if Irving's delay was intentional.  Accordingly, Pearl Seas has alleged a valid claim that the arbitrators' refusal to rule is unreasonable and that Pearl Seas has been harmed and prejudiced.

**B.**   **THE ARBITRATORS HAVE FAILED TO RULE ON NOISE AND VIBRATION WITHIN ANY REASONABLE TIME LIMIT**

It is undisputed that the noise and vibration levels on the Vessel vastly exceeded the limits set in the Contract's Specifications when Irving attempted its late delivery of the Vessel in May 2009 and that the Majority, despite acknowledging that deficiency, have failed to rule against Irving, and have compounded that error by using the ongoing arbitration to rewrite the Contract by giving Irving more than two additional years, and counting, to attempt to fix the noise and vibration deficiency.

1.   *The Arbitrators Have Failed to Rule on Undisputed Noise and Vibration Exceedances After Sea Trials or Otherwise For Three Years and Have Refused to Enforce Delivery Deadlines*

The experts for both parties agreed after sea trials that the Vessel does not meet noise and vibration limits set forth in the Contract; however, the arbitrators have refused to rule on undisputed noise and vibration exceedances for almost three years.  *See* Pet. ¶¶ 32-44.

Pearl Seas commenced arbitration due to the Vessel's failure to meet noise and vibration specifications in a demand for arbitration on <u>August 21, 2008,</u> [11] before sea trials, when it became clear that the Vessel would not meet noise specifications because of Irving's failure to select and install machinery so as to minimize noise and vibration.[12]

---

[11] *See* Pet.  ¶ 23.

[12] *See* Pet. ¶ 21.

6801562.6

However, the arbitrators in a February 9, 2009 award deferred the issue until after sea trials, stating:

> [W]hether the ship as built will comply with the noise and vibration specifications cannot be determined until the vessel's sea trials.  At that time, the Contract spells out the procedure for determining whether the ship conforms to the applicable specifications, and the owner's remedies in the event that it does not.[13]

Pearl Seas fully expected that after sea trials if the Vessel did not meet the noise specification Irving would be required to correct the problem during the Contractual 60-day cure period.[14] Irving tendered the deficient Vessel for acceptance and delivery on May 6, 2009 and for this and other reasons, Pearl Seas rejected it on May 8, 2009. This rejection notice triggered a maximum 60-day cure period in which Irving could resolve defects and obtain missing regulatory approvals.[15]

The sea trials revealed that the Vessel's noise and vibration had actually <u>worsened</u> and Pearl Seas asked the arbitrators to rule on May 20, 2009.[16]  After the cure period expired and in the absence of corrective action by Irving, Pearl Seas submitted a second request for a ruling to the Panel on August 28, 2009.[17]

2.    *Hearings Addressing Noise and Vibration Were Held*

The issue of the Vessel's excessive noise and vibration was presented to the Panel. The parties presented extensive testimony during the February, March and April

---

[13] *See* Pet. ¶ 24.

[14] *See* Pet. ¶ 25.

[15] *See* Pet. ¶ 26.

[16] *See* Pearl Seas Memo at pp. 15-16.

[17] *See* Pet. ¶ 36; *see also* Pearl Seas Memo at p. 16.

6801562.6

2010 hearings regarding noise, including several hours of testimony from Pearl Seas' noise expert.[18]   Both parties also submitted post-hearing briefs.[19]

      3.    *The July 2010 Award Sidestepped the Issue of Noise and Vibration*

In its July 2, 2010 partial final award, the Majority arbitrators refused to rule on noise and vibration until "further evidence and briefing from the Parties," noting an "off the record" statement from Irving about a new propeller, and stating that its view of this issue was "incomplete."[20]

      4.    *The November 2010 Awards Refused to Rule on the Issue of Noise and Vibration*

Finally, in its "deliverability" decision on November 9, 2010, the arbitrators once again simply refused to rule on noise and vibration.[21]  Despite the extensive record from hearings and briefing and undisputed noise exceedances, the arbitrators gave Irving a further indefinite period to attempt to cure the Vessel's noise and vibration deficiency because:[22]

> The Panel is not in a position to rule on any aspect of Pearl Seas' noise complaint, particularly given that the Panel has been advised that new propellers were ordered [by Irving] and were to be shipped in September [2010]…Because there is a dispute as to

---

[18] Pet. ¶ 38; *see also* Motion to Vacate, Ex. A, 11/9/10 PFA, p. 1.  During consideration of the Petition on the merits, Pearl Seas will demonstrate that the noise violations were fully briefed and subject to extensive testimony at hearings.  These included the following: Joseph Smullin, a noise expert, testified on PSC's behalf on March 4, 2010.  Other PSC witnesses addressed noise problems on the Vessel, including Markku Kanerva of Deltamarin, Irving's naval architect (February 8, 2010); Peter Fetten of Carnival Cruise Lines (February 9, 2010); Tony Severn of PSC (March 3, 2010); and John Hunter of PSC (April 22, 2010).

[19] On June 28, 2010 and July 16, 2010, Pearl Seas submitted its post-hearing briefs, which extensively briefed the issue of noise violations on the Vessel and the impact this would have on passenger service (rendering some spaces unusable).  Irving submitted its own post-hearing briefs as well.  Motion to Vacate, Ex. A, 11/9/10 PFA, p. 1.

[20] July 2, 2010 PFA p. 11, n. 7.

[21] *See* Pet. ¶ 31.

[22] *See* Pet. ¶ 36-37.

6801562.6

> whether the new propellers will solve the noise and vibration
> problems, the Panel will not rule on any aspect of the issue until
> it is determined whether or not the propellers in fact provide a
> fix.[23]

Pearl Seas intends to submit evidence during the hearings that Irving ordered new propellers for the Vessel in March 2011 only _after_ inquiries from the Panel about the status of this alleged corrective action (albeit one that was proffered long after the relevant cure periods expired.)

Irving in its Motion to Dismiss, dated May 27, 2011, admits that "the propeller is still to be delivered," and obviously has neither been installed nor tested to determine whether and to what degree it can improve the noise and vibration deficiencies.[24]   The Panel's reliance on Irving's counsel's representations about the ordering and delivery dates of propellers and rewriting of the Contract's deadlines was patently unreasonable, demonstrates evident partiality, and constitutes (in the words of dissenting Arbitrator David Nourse) "a mockery of a carefully drafted commercial agreement."[25]   As discussed below, this sort of unfettered "industrial justice" in defiance of the Contract and the law warrants vacatur of the award and termination of the Contract.

## C.   THE ARBITRATORS HAVE FAILED TO RULE ON THE VESSEL'S LACK OF CLASS CERTIFICATION AND FLAG STATE APPROVAL WITHIN ANY REASONABLE TIME LIMIT

It is undisputed that Lloyd's refused to class the Vessel when it was tendered for delivery in May 2009, that the Marshall Islands have refused to flag the Vessel, and that to this day the Vessel is neither classed nor flagged.  Nevertheless, the arbitrators have

---

[23] Pet. ¶ 31.

[24] _See_ Irving Memo. at 7.

[25] Pet. ¶ 36; _See_ Pet. ¶¶ 38, 39.

6801562.6

refused to rule and recognize the absence of class certification and flag state approval as well as the flag state's decision to refuse to flag the Vessel.  Instead, the Majority have given Irving unlimited time to obtain regulatory approvals.

Significantly, the arbitrators do not have jurisdiction to hear regulatory compliance disputes or to decide that regulatory compliance disputes are "deliverability" issues. For the purposes of the arbitration, Irving has either obtained necessary regulatory approvals or has not.

1.     *The Contract Sets Deadlines for Class Certification and Flag State Approval and Does Not Authorize Arbitrators to Extend Deadlines for Regulatory Approvals or Disputes Concerning Regulatory Approvals*

The Contract sets deadlines for class certification and flag state approval, requiring Irving to deliver a Vessel with all regulatory approvals necessary for immediate overnight international passenger service, including class certification and flag state approval.[26]  Moreover, if a dispute related to regulatory compliance the arbitrators would not have <u>any</u> authority to extend the "Delivery Date"; only the regulatory authority would have that authority (§ 14.4.1).  Irving has never sought, and no regulatory body has ever granted, such relief in this dispute.[27]

The Seventh Circuit's decision in *Hasbro,* 367 F.3d at 693, indicates that in a challenge to a failure to rule, courts should consider whether the party challenging the delay "benefited from the delay."  In *Hasbro,* the Seventh Circuit held that Catalyst, which complained of the delay, "was able to hold off payment to Hasbro for several months at no cost."  *Id.*  Here, in contrast, Pearl Seas has been prejudiced because it has

---

[26] *See* Pet. ¶¶ 12-16.

[27] *See* Pet. ¶ 18.

paid $30 million to Irving, has no ship, the Contract's deadline for delivery was three years ago and the Majority ruled that Pearl Seas' damages for delay are limited to nine weeks of liquidated damages.[28]   There is no end to Pearl Seas' prejudice because the Majority is permitting Irving to hold Pearl Seas to seemingly interminable financial hemorrhage as time marches on with no resolution in sight.

> 2.   *The Arbitrators Have Failed to Rule on the Undisputed Failure to Secure Class and Flag State Approvals In its November "Deliverability" Award*

In its August and September, 2009 requests for arbitration, Pearl Seas asked the arbitrators to rule on Irving's failure to obtain the required approvals within the Contract's cure period.   However, the Majority refused to rule and treat the lack of regulatory approvals as an issue entitling Pearl Seas to termination of the Contract.   The Majority, on pages 11-12 of the July 2, 2010 PFA, recharacterized the lack of approvals as a "deliverability" issue, stating:

> The lack of regulatory approvals is also not an issue which the Panel is presently in a position to conclude gives rise to a default entitling Pearl Seas to rescind the Contract . . . .   Indeed, that question is very much in dispute and it is a dispute that the Panel is not empowered to rule on.   As the parties are aware, the Shipbuilding Contract specifically provides that the Panel may not rule on the issue of Class or regulatory compliance, as such disputes must be referred to the Classification Society or other relevant regulatory body for decision.   (Contract § 14.1.1.2) Accordingly, the Panel has written to Lloyd's Register, seeking clarification on this point.   This is the first step in the process of determining whether or not the Owner may refuse to accept delivery, pursuant to Contract § 7.4.3 of the Contract.   It will be determined <u>as a deliverability issue</u>, however, not as a matter of termination or rescission of the Contract. (underscoring added)[29]

---

[28] *See* Point E, *infra.*

[29] Pet. ¶ 52.

-13-

In the November "deliverability" PFA,  the only possible import of the lack of class and flag would have been adverse to Irving since the Vessel was neither classed and flagged nor even in process of resolution of objections (still unresolved) raised by the regulators.  The Majority once again refused to rule on the lack of regulatory approval, although this time for a different justification.

The arbitrators' refusal to rule on the import of the lack of class and flag in the November PFA is even more egregious than its refusal to rule on noise violations because the arbitrators are not empowered to undertake any substantive review of the merits of the regulatory approvals process.  Rather, the only role of the arbitrators is to recognize as "final and binding" the undisputed facts that (i) Irving attempted to deliver a Vessel in May 2009 without class certification and flag state approval; and (ii) that Irving failed to obtain, and that the regulators refused in writing to issue, class certification and flag state approval within the Contract's cure period.[30] Instead, the Majority has refused to rule on the issues presented to them and are now purporting to supervise and manage the regulatory review process and entertain defenses that they have no jurisdiction to even evaluate.[31]

**D.   THE COURT'S FEBRUARY 9, 2011 DECISION REGARDING FINALITY IS NOT DISPOSITIVE OF PEARL SEAS' CHALLENGE FOR FAILURE TO RULE**

Irving cannot be heard to argue that the Pearl Seas petition should be dismissed on the grounds that there is no final award because the basis of Pearl Seas' petition is that

---

[30] *See* Pet. ¶¶18, 45-48.

[31] In the course of the April 1, 2011 meeting with the  Panel, Pearl Seas formally objected to this new regulatory review process mandated by the Panel.  As stated at the meeting, Pearl Seas is participating on a without prejudice basis.

-14-

the Majority has <u>not</u> issued any award.   Moreover, this Court's February 9, 2011 Decision did not address the separate and distinct issues raised in Pearl Seas' February 7, 2011 Petition, which is the Majority's unreasonable delay in failing to rule on issues submitted to them.

> 1.   *A Finality Requirement Would Be Nonsensical for a Challenge on the Ground of Failure to Rule*

A finality requirement of the type Irving asserts would be nonsensical because Pearl Seas' challenge is for a failure to rule long past any reasonable deadline.   Count One of Pearl Seas' Petition consists of a challenge for failure to rule, pursuant to 9 U.S.C. § 10(a)(4).[32]   It would create a Catch-22 if the party harmed by an unreasonable delay in ruling had to wait until after a ruling before seeking judicial relief.   Rather, Pearl Seas has asserted its objections to the delay and the harm and prejudice caused by the arbitrators' failure to rule, as the courts in this Circuit have required for parties making such claims. *See I Appel Corp.*, 2005 WL 2995387, at *8; *Success Village Apartments*, 380 F. Supp.2d at 98.

As this Court stated in *Success Village Apartments*, "'post-award technical objections by a losing party as a means of avoiding an adverse arbitration decision' are disfavored." *Success Village Apartments*, 380 F. Supp.2d at 98 (*quoting West Rock Lodge No. 2120, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Geometric Tool Co.,* 406 F.2d 284, 286 (2d Cir. 1968).   Accordingly, the only logical time to bring a challenge to failure to rule under 9 U.S.C. 10(a)(4) is prior to the issuance of the award, which is what Pearl Seas has done in the Petition dated February 7, 2011.

---

[32] *See also* Pet. ¶¶ 30-44, 53-58.

-15-

6801562.6

Irving does not address Pearl Seas' argument that the arbitrators did not rule within a reasonable time. Irving has provided no legal authority for the proposition that a finality requirement must apply in a challenge on the grounds of failure to rule. Instead, Irving merely points out that the arbitration is ongoing. *See* Irving Memo. at 7.

2.   *Because the Court's February 9, 2011 Decision Did Not Address a Claim for Failure to Rule, the Decision Is Not Dispositive*

The Court's February 9, 2011 Decision, ruling on Pearl Seas' petition to vacate the Majority's July 2, 2010 award, did not consider a challenge pursuant to 9 U.S.C. § 10(a)(4) on the grounds of failure to rule. Such a claim is squarely presented in Pearl Seas' February 7, 2011 Petition challenging the November 2010 awards. Irving provides no meaningful analysis of that claim. Instead, Irving states, incorrectly, that "[t]he five counts of the Petition mirror the counts of Pearl Seas' earlier petition to vacate the July 2 PFA."[33] That is wholly incorrect, since Pearl Seas' February 7, 2011 Petition raises a challenge to different awards principally based on an entirely different legal theory—the Panel's complete failure to rule on the most important claims presented for resolution.

**E.   IRVING'S RULE 12(B)(6) MOTION MUST BE DENIED BECAUSE PEARL SEAS HAS STATED A VALID CHALLENGE ON THE GROUNDS OF FAILURE TO RULE**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must consider whether Pearl Seas' claim based on the arbitrators' failure to rule sufficiently states a plausible claim. Pearl Seas' Petition has alleged all required elements of a failure to rule claim. *See I Appel Corp.*, 2005 WL 2995387, at *8; *Success Village Apartments*, 380 F. Supp.2d at 98. Irving has simply ignored this claim and therefore does not meet

---

[33] Irving Memo. at p. 9.

its burden under Rule 12(b)(6).  Accordingly, Irving's motion to dismiss must be denied.

Pearl Seas has clearly alleged that it timely objected to the arbitrators' failure to rule.  For example, Pearl Seas wrote to the arbitrators on May 20, 2009 invoking the arbitrators' February 9, 2009 representation to rule on noise violations once sea trials occurred.[34]  On March 11, 2010, Pearl Seas wrote to the arbitrators to ask them to rule on Pearl Seas' September 23, 2009 submission regarding Irving's failure to provide regulatory approvals required at delivery.[35]  Nevertheless, the Panel refused to rule.

Pearl Seas has also alleged significant harm and prejudice from the arbitrators' failure.[36]  First, Pearl Seas has suffered prejudice and harm because the Arbitrators have extended Irving's deadlines to perform, thereby delaying the date when the Vessel might be ready for immediate service.[37]

Second, the length of the arbitrators' unreasonable delay has imposed tremendous financial costs.  The Panel's actions, rulings and failures to rule have effectively eliminated the 2008, 2009, 2010 and 2011 sailing seasons—which constitute tens of millions of dollars in lost revenue.  Pearl Seas' construction financing debts continue to accrue for the $30 million it has already given Irving for the Vessel, and which Irving continues to hold.[38]  These losses are particularly prejudicial to Pearl Seas as the

---

[34] Petition ¶ 58.

[35] Pet. ¶ 58.

[36] *See, e.g.,* Pet. ¶ 5.

[37] Accordingly this dispute is unlike those in which courts have found no harm because here there is no prejudice from "losing the case later, rather than sooner."  *See I Appel Corp.*, 2005 WL 2995387, at *8 (*quoting Green v. Ameritech Corp.*, 12 F. Supp.2d 662, 665 (E.D. Mich 1998), *rev'd on other grounds*, 200 F.3d 967 (6th Cir. 2000).

[38] *See* Pet. ¶ 5.

6801562.6

arbitrators have stated that Pearl Seas will be limited to nine weeks of liquidated damages for delay even if Irving's failure to complete the Vessel is intentional.

Third, the Pearl Mist is now essentially a two-year-old Vessel that still lacks regulatory certifications required for use. Even if Irving manages to obtain regulatory approvals and again attempt delivery, the Pearl Mist will be a ship that has sat in Canada unfinished for years; and will never be the brand-new ship that Pearl Seas bargained for.[39]

This effort by the Majority arbitrators to avoid ruling against Irving must be brought to a halt, the Panel's November 2010 awards vacated, and the Contract terminated in view of the indisputable failures of Irving to meet the Contract's noise and vibration specifications and to obtain the required regulatory approvals.

## CONCLUSION

For the reasons explained above, Petitioner Pearl Seas respectfully requests that the Court deny Irving's motion to dismiss Pearl Seas' Petition to Vacate the November 9, 2010 and November 19, 2010 Arbitral Awards and Other Relief.

Dated   June 17, 2010
    New York, New York

PETITIONER,
PEARL SEAS CRUISES, LLC,

By:   /s/Donald J. Kennedy
    Donald J. Kennedy (ct23620)
    Gary D. Sesser (phv04221)
    Christopher Rizzo (phv04222)
    Judith Wallace (phv04233)

---

[39] *See* Pet. ¶ 5.

6801562.6

CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, NY  10005
Telephone:  (212) 732-3200
Fax:  (212) 732-3232
Email:  kennedy@clm.com
Email:  sesser@clm.com
Email:  rizzo@clm.com
Email:  wallace@clm.com

By:    /s/Madeleine F. Grossman
      Madeleine F. Grossman (ct05987)
      Frank J. Silvestri, Jr. (ct05367)
      Janna D. Eastwood (ct26522)
      LEVETT ROCKWOOD P.C.
      33 Riverside Avenue
      P.O. Box 5116
      Westport, CT  06881
      Telephone:  (203) 222-0885
      Facsimile:  (203) 226-8025
      Email:  mgrossman@levettrockwood.com
      Email:  fsilvestri@levettrockwood.com
      Email:  jeastwood@levettrockwood.com

-19-

## CERTIFICATION

I hereby certify that on June 17, 2011, a copy of the foregoing *Memorandum of Law in Opposition to Irving's Cross-Motion to Dismiss the Petition to Vacate the November 9, 2010 and November 19, 2010 Arbitral Awards and Other Relief* was filed electronically and served by mail on any appearing party unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all appearing parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

By:   /s/Donald J. Kennedy\
      Donald J. Kennedy (ct23620)\
      Gary D. Sesser (phv04221)\
      Christopher Rizzo (phv04222)\
      Judith Wallace (phv04233)\
      CARTER LEDYARD & MILBURN LLP\
      Two Wall Street\
      New York, NY  10005\
      Telephone:  (212) 732-3200\
      Fax:  (212) 732-3232\
      Email:  kennedy@clm.com\
      Email:  sesser@clm.com\
      Email:  rizzo@clm.com\
      Email:  wallace@clm.com

-20-